THE PENN MUTUAL LIFE INS. CO. v. McGRAW.

*Insurance—Question for jury—False and fraudulent statements concerning insured's health—Charge to jury—Burden on insurer to prove falsity and materiality—Section 9391, General Code—Evidence—Admissibility of insured's statements to medical examiner.*

1. Whether insured made false and fraudulent statements to medical examiner as to health and whether beneficiary participated in such fraud *held* for jury.
2. Charge that insurer, to bar recovery on policy, has burden of proving that insured's statements to medical examiner as to health were willfully made, false and fraudulent, and material, and induced issuance of policy, and that insurer's agent had no knowledge of their falsity and fraud, *held* proper under Section 9391, General Code.
3. Insured's statements to medical examiner as to health cannot, under Section 9391, General Code, be offered in evidence to bar recovery on policy until insurer shows they were false and fraudulent.

(Decided May 3, 1926.)

ERROR: Court of Appeals for Butler county.

*Mr. C. W. Elliott,* for plaintiff in error.
*Mr. Clinton D. Boyd,* for defendant in error.

CUSHING, J. The action in the court below was on a contract, evidenced by a policy of life

insurance. The plaintiff beneficiary sued for $6,000, the face of the policy. The company, by answer, after admitting certain things, charged that the deceased and the beneficiary procured the policy to be issued by fraud. The specific charge was that the answers to certain questions propounded by the medical examiner were false, and made for the purpose of inducing the company to issue the policy. It further stated that but for such false and fraudulent answers it would not have issued the policy.

The reply denied the allegations of the answer.

The application for the policy was made August 25, 1923. The policy was issued and the premium paid August 28, 1923. McGraw died January 30, 1924.

The judgment of the court below was for $6,360, with interest, and this action is prosecuted to reverse that judgment.

Two questions were argued by plaintiff in error: That the verdict and judgment were against the weight of the evidence; and that there was error in the charge of the trial court.

McGraw, who could not read or write, signed the application by his mark.

The answers to questions on which the plaintiff in error bases its claim for a reversal were with reference to McGraw's health; that it was good; that he had not been attended by nor had not consulted a physician; that he had not been afflicted, among numerous other diseases mentioned, with cancer.

The medical examiner's certificate recites that Dr. Stall was named by the deceased as their

family physician; as one that had attended him.
According to the record, McGraw told Dr. Lumis,
the company's medical examiner, that he had con-
sulted Dr. Lang, of Cincinnati. Lumis then changed
his answer and said McGraw told him he had been
to a physician in Cincinnati, also that he had con-
sulted Dr. Bauer, and that Bauer had lanced the
glands in his neck, and that McGraw told him
(Lumis) that he had some trouble with his nose and
throat.

The defendant below offered numerous witnesses
to the effect that, in the spring and summer of
1923, McGraw had been attended by numerous
physicians; that he had been in a hospital once
at Middletown and once at Cincinnati; and de-
fendant claimed that McGraw was suffering from
cancer of the bucal cavity. Other testimony was
offered to the effect that a foreign substance, a
piece of wood, or a piece of cornstalk, had gotten
into his nose, and remained there for such length
of time that it caused a sore; that the doctors
in Cincinnati did not discover it; that the family
physician removed the same; and that he recovered
from the trouble that he had suffered earlier in
the year.

The medical testimony offered by the defendant
is in conflict.

It is also in the record that early in October,
1923, the company, through its agent, directed a
re-examination of McGraw, and that the physician
passed him a second time.

Counsel for the defendant, in his examination of
its witnesses, without objection, conducted an un-
usual examination, in that leading questions were

OHIO APPELLATE REPORTS. 311

App.]    Penn. Mutl. L. Ins. Co. v. McGraw.

asked throughout, and there was nothing that he desired to bring out that was not before the jury. To many of the questions, counsel even suggested the answers, and the witnesses responded accordingly.

The claim that the beneficiary participated in the fraud charged in the answer was based on the fact that she called at the office of the agent with reference to the insurance, and was present when the deceased answered the questions of the medical examiner and when he signed the application. There is no evidence that she in any way directed the answers, or suggested what answers should be made, so that the question of fact on the disputed evidence was properly submitted to the jury.

The trial court read Section 9391, General Code, to the jury. It is: "No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is willfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer, the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer."

At the request of the defendant, the court instructed the jury, by special charge, as to what in law was the meaning of good health; that, if insured's answers to the questions propounded by the medical examiner were false, and he knew they were false, then such statements were willfully

312     OHIO APPELLATE REPORTS.

Penn Mutl. L. Ins. Co. v. McGraw.     [21 Ohio

false and fraudulently made within the meaning of the statute; also that, if the insured answered "Yes" to the question, "Are you in good health?" and knew at the time that he was afflicted with any serious ailment or disease which tended to weaken or undermine his health, such answer was willfully false, whether or not he knew what particular disease or ailment he had.

In view of this charge, and the rule stated by the court by which the jury should be governed in determining the question of falsehood and fraud, in making the application for this insurance, and the testimony offered under circumstances most favorable to the defendant, there can be no question but that the jury determined, in its judgment, that there was neither falsity nor fraud on the part of the plaintiff or the deceased in procuring the policy. This position is emphasized by the fact that a second medical examination was made, and the company had more than three months thereafter to investigate and determine whether or not it would cancel the policy. It did not cancel it.

Counsel complains of the general charge of the court, and calls attention to three parts on which he relies as error. An examination of the charge, in connection with the parts complained of, discloses that the charge was more favorable to the defendant than it was entitled to. The statute provides that such answers to interrogatories shall not bar a recovery upon any policy of insurance, nor be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer was willfully false, was fraudulently made,

that it was material, and induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

From the second examination, and the fact that some of the physicians lived within a short distance of the office of the medical examiner, and the time that elapsed from August 25 to the latter part of January, it would seem that the company was given ample opportunity to investigate the statements made in the application.

Counsel for plaintiff in error claims that the court erred in its charge, in that it stated that the burden of proving that John R. McGraw made the statements, or any of them, as set out in the answer, that they were willfully false and fraudulent, that they were material, and induced the company to issue the policy, and that, but for them, the policy would not have been issued, and that the agent of the company and the defendant company had no knowledge of their falsity or fraud, rests upon the defendant.

If counsel for the plaintiff in error means that it was error for the court to charge that the burden was on the defendant, we call attention to Section 9391, General Code, above quoted. It says that no answer shall bar a recovery, etc., or be used in evidence, etc., unless it be clearly proved that such answer is willfully false, was fraudulently made, that it was material, and induced the company to issue the policy. We further call attention to the fact that these answers were offered in evidence, and, without any finding, the defendant

was permitted to, and did, call numerous witnesses to testify as to McGraw's condition, and, in effect, give their opinion that said answers were false and fraudulent. If this statute means anything, it is that, before the answers to questions may be offered in evidence, the company must show that they were false and fraudulently made.

In our view, the court did not err in this charge, and in fact, taking the charge as a whole, it was more favorable to the defendant than it should have been. In this view of the case the judgment of the court of common pleas will be affirmed.

*Judgment affirmed.*

BUCHWALTER, P. J., and HAMILTON, J., concur.